**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**David F. KELLY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 2007.
Filed Aug. 6, 2007.

---

Deborah K. Hoff, Chambersburg, for appellant.

Jeremiah D. Zook, Assistant District Attorney, Chambersburg, for Commonwealth, appellee.

BEFORE: HUDOCK, KELLY and JOHNSON, JJ.

OPINION BY HUDOCK, J.:

¶ 1 Appellant appeals from the order denying his Petition for Writ of *Habeas Corpus.* We affirm.

¶ 2 Appellant was detained in the Franklin County Prison by the Franklin County Probation Department (FCPD) following his convictions for escape and resisting arrest at No. 1642–2001; receiving stolen property at No. 1643–2001; receiving stolen property at No. 1644–2001; and receiving stolen property at No. 1645–2001. On March 13, 2002, the trial court sentenced Appellant as follows: State incarceration on the escape and one of the receiving stolen property convictions, and 24 months of special probation on the resisting arrest and two remaining receiving stolen property convictions. The three special probation sentences were to run concurrently with each other and consecutively to the escape sentence.

¶ 3 Upon completion of the minimum incarceration sentence, Appellant was paroled by the Pennsylvania Board of Probation and Parole (PBPP). However, due to new charges being filed against him, Appellant was again detained by the PBPP until his maximum sentence date of September 11, 2006. On September 11, 2006, Appellant was released from the PBPP detainer. However, on that same date, FCPD lodged a detainer against Appellant for the three special probation sentences. *See* Docket 1645–2001 at No. 46, Exhibit B. The detainer expressly informed Appellant that he was being held for violating probation rule

2a [,]which states you must live as a law abiding citizen[,] by obtaining new criminal charges

New Charges—Unlawful deliver (F); Criminal Use of Communication Facility (F)

*Id.*

¶ 4 On September 15, 2006, Appellant filed a Petition for Writ of *Habeas Corpus,* challenging his detention by FCPD. The trial court denied Appellant's petition on October 27, 2006, finding that "revocation authority in a special probation case remains with the Court of Common Pleas." Opinion, 12/22/06, at 4. Thereafter, Appellant filed a notice of appeal and, as directed by the trial court, a Rule 1925(b) concise statement of matters complained of on appeal.

¶ 5 Appellant presents one issue for our review: "Was the Franklin County Probation Department without authority to detain [Appellant] for violation of probation sentences imposed by the Court?" Appellant's Brief at 4.

■ ¶ 6 In a pre-trial *habeas corpus* case, on appeal this Court is to determine whether a *prima facie* case was established. *Commonwealth v. Miller,* 810 A.2d 178, 180 (Pa.Super.2002). In that vein, we may reverse a decision to deny a petition for *habeas corpus* only when the trial court has committed a manifest abuse of discretion. *Miller,* 810 A.2d at 180. The basis of Appellant's *habeas corpus* petition is jurisdictional. According to Appellant, FCPD did not have authority to detain him because the PBPP has "exclusive power to supervise special probation cases, with the same authority as in the case of special parole." Appellant's Brief at 9. In support of his position, Appellant relies on 61 P.S. section 331.17 (Powers of board respecting parolees; supervision of persons placed on probation; sentences for less than two years excepted), which reads as follows:

The board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison or penal institution, as hereinafter provided. It is further provided that the board shall have exclusive power to supervise any person hereafter placed on probation or parole (when sentenced to a maximum period of less than two years) by any judge of a court having criminal jurisdiction, when the court may by special order direct supervision by the board, in which case the probation or such parole case shall be known as a special case and the authority of the board with regard thereto shall be the same as herein provided with regard to parole cases within one of the classifications above set forth: Provided, however, That the powers and duties herein conferred shall not extend to persons sentenced for a maximum period of less than two years, and nothing

herein contained shall prevent any court of this Commonwealth from paroling any person sentenced by it for a maximum period of less than two years: And provided further, That the period of two years herein referred to shall mean the entire continuous term of sentence to which a person is subject, whether the same be by one or more sentences, either to simple imprisonment or to an indeterminate imprisonment at hard labor, as now or hereafter authorized by law to be imposed for criminal offenses. The power of the board to parole shall extend to prisoners sentenced to definite or flat sentences.

61 P.S. § 331.17. The trial court determined that section 331.17 "should not be read to deprive the Court of Common Pleas of exclusive jurisdiction to handle all matters pertaining to defendants serving a sentence of probation with the exception of supervision provided by [PBPP] at the discretion of the Court." Opinion, 12/22/06, at 3–4. After careful and thorough review of the record and controlling statutory provisions, we conclude that the trial court did not abuse its discretion in denying Appellant's petition. While PBPP was charged with supervising Appellant, FCPD was not prohibited from detaining Appellant.

■ ¶ 7 Appellant received an aggregate sentence of eighteen to sixty months' imprisonment at a state facility for receiving stolen property (No. 1644–2001) and escape (No. 1642–2001), followed by three concurrent sentences of twenty-four months' special probation. Pursuant to section 331.17, "special probation" is defined as supervision over "any person hereafter placed on probation ... (when sentenced to a maximum period of *less than* two years) by any judge of a court having criminal jurisdiction, when the court may by special order direct supervision by the board ..." 61 P.S. § 331.17

(emphasis supplied). Technically, because Appellant was sentenced to a maximum period of *more than* two years, his probation does not fall within section 331.17's definition of a "special case." Thus, PBPP did not have the exclusive power to supervise Appellant under section 331.17.

¶ 8 However, PBPP did have the power to supervise Appellant as a special case under a different statutory provision. PBPP has "exclusive power to supervise any person hereafter placed on probation by any judge of a court having criminal jurisdiction, *when the court may by special order direct supervision by the board.*" 61 P.S. § 331.17a (emphasis supplied). Herein, the trial court requested special probation supervision by PBPP (Docket 1644–2001, No. 56), and PBPP accepted Appellant for special probation supervision (Docket 1645–2001, No. 40 at Exhibit A) pursuant to the following criteria:

Acceptance of a case for supervision or presentence investigation from a county which, on December 31, 1985, maintained adult probation offices and parole systems, will be at the Board's discretion. The Board will ordinarily accept a case that meets the following criteria:

(1) For supervision:

(i) A felony conviction and a sentence to serve a probationary term of at least 2 years.

37 Pa.Code § 65.1. Thus, section 17a and the record confirm that PBPP had authority to supervise Appellant.

■ ¶ 9 Having determined that Appellant's probation qualified as a special case under 61 P.S. section 331.17a, subject to PBPP supervision, we must now consider whether FCPD was authorized to detain Appellant for violating his three probationary sentences. We conclude that it was, as an agent of the trial court and PBPP.

¶ 10 Where a defendant violates the conditions of probation, as Appellant did in this case by committing other crimes, "[PBPP] may ... detain the special probationer or parolee in a county prison and *make a recommendation to the court,* which may result in the revocation of probation or parole and commitment to a penal or correctional institution to serve a sentence in the case of probation or the remainder of the sentence in the case of parole." 37 Pa.Code § 65.3 (emphasis supplied). PBPP makes its recommendations to the trial court because that is the court vested with the power to impose and revoke probation. *See* 42 Pa.C.S.A. § 9754 (listing conditions trial court may use in imposing probation); § 9971(b) (providing rules and procedures for modifying or revoking probation); and Pa. R.Crim.P. 708 (describing procedures for determination that defendant violated probation). PBPP recognizes the trial court's jurisdiction over probation violations in its statement of conditions for special cases:

> If you violate any of the conditions of your probation/parole or are arrested on new criminal charges while on special probation/parole, the Board/*Court has the authority to lodge a detainer against you* which will in effect prevent your release from custody pending disposition by the Court, even though you have posted bail or been released on your own recognizance from those charges.

> If you are convicted of a crime committed while on special probation, or violate any of the conditions of your probation, *the Court has the authority,* after the appropriate hearing(s), *to revoke probation* and impose sentence.

> \* \* \*

> If you violate a condition of your special probation/parole, and after the appropriate hearing(s), *the Court decides that you are in violation of a condition of your special probation*/parole, you may be sentenced/recommitted to prison for such time as may be specified by the Court.

Docket 1645–2001, No. 40 at Exhibit A (Conditions Governing Special Probation/Parole) (emphasis supplied); *see also,* 37 Pa.Code § 65.5 (providing that if defendant violates conditions of probation, court may revoke probation of and impose sentence upon defendant). Appellant signed this document, acknowledging that (1) he read or had read to him the conditions of probation; (2) fully understood them; (3) agreed to follow them; and (4) understood the penalties involved for a violation of them. Consequently, Appellant subjected himself to the jurisdiction of the Franklin County Court of Common Pleas.

¶ 11 The courts of common pleas delegate authority to county probation officers to detain defendants who violate probation. Herein, FCPD's probation officer, Tiffany Stevens, states in the detainer that she was acting "[b]y virtue of the authority delegated to [her] by the Court of Common Pleas of the 39th Judicial District of Pennsylvania, Franklin County Branch." Docket 1645–2001 at No. 46, Exhibit B. As an agent of the trial court, FCPD had authority to detain Appellant for VOP proceedings.

¶ 12 In further support of our conclusion that FCPD had authority to detain Appellant, we rely on 61 P.S. section 331.17a. According to that section, PBPP is authorized—for the purpose of carrying out its supervisory functions—to provide funding and training to any county which "provides additional probation staff for pre-sentence investigations and for improved probation supervision and program ..." 61 P.S. § 331.17a. This language suggests that county probation offices, such as FCPD, act on behalf of PBPP in detaining, investi-

gating, and supervising defendants. The following testimony of Franklin County Probation Officer Richard Mertz confirms our conclusion:

> When an individual is committed to SCI for state sentences and there are probationary cases running either concurrent or at the expiration, we transfer the supervision of those cases to the [PBPP] under the special probation case system. That is done so there's not duplicate [sic] of supervision between the state and county level, but the state board will supervise those cases up until the point of a violation and then they return it to the county for violation proceedings. Although the period of probation had not yet begun, [PBPP] did send the transmittal letter advising of the violation based on new arrest and directed that we replace their detainer by 9/11 to begin probation violation proceedings
> . . .

N.T., 10/23/06, at 11. When asked by defense counsel on what authority he relied, Mr. Mertz answered:

> The supervision, the powers given probation and parole, county probation and parole to do violations. We have full jurisdiction over county cases, and probation remains a county case even though it is a special [case] supervised by the [PBPP]. . . . [T]here is no limit on probation as to the length of time that counties can supervise a probationary case.

*Id.*, at 14–15. This testimony reveals the practical interaction between state and county probation officials in supervising special probation cases. Moreover, the record supports Mr. Mertz' testimony. PBPP sent a transmittal letter to the trial court, indicating Appellant's changes in status as follows: arrested; new criminal charges; confined; board warrant filed. *See* Docket 1644–2001, No. 56. In the transmittal letter, PBPP recommended the following: schedule violation hearing; revoke probation/parole. *Id.* Relying on this transmittal letter and pursuant to its authority to handle probation and parole violations as the enforcement arm of the trial court, FCPD lawfully lodged the challenged detainer.

¶ 13 Appellant relies on the case of *Commonwealth v. Dorkoskie*, 1 Pa.D & C4th 410 (1987), *affirmed,* 375 Pa.Super. 615, 541 A.2d 27 (1987). We distinguish *Dorkoskie* on its facts. *Dorkoskie* involved a defendant who was sentenced to county prison for eleven and one-half to twenty-three months. Upon his parole, the defendant's supervision was transferred to PBPP by order of the trial court. As the result of the defendant committing new offenses while on parole, the trial court revoked his parole. A panel of this Court determined that the defendant's parole fell within the "special case" exception of section 331.17, as the original sentence was less than two years. Accordingly, but reluctantly, the panel interpreted section 331.17 as giving exclusive power to PBPP to revoke the defendant's special parole. *See Commonwealth v. Call,* 249 Pa.Super. 511, 378 A.2d 412, 416 (1977) (quoting, "The sentencing judge lacks authority to issue an order at variance with the terms of this statute [61 P.S. § 331.17].").

¶ 14 Unlike the defendant in *Dorkoskie,* Appellant received a sentence of more than two years. Therefore, his probation does not fall within the special case exception of section 331.17. While the *Dorkoskie* court analyzed section 331.17 in the context of special paroles, it did not address who has authority over special probation cases. In fact, we note the *Dorkoskie* court omits the probation language when citing section 331.17. Thus, we agree with the trial court that section 331.17 does not remove revocation authori-

ty in special probations cases from the trial court. *Accord,* Wile, Timothy P., 12 Pa. Practice: Pennsylvania Law of Probation and Parole, § 3:6 at 62 (West 2003) (interpreting section 331.17 as leaving revocation of special probation in the hands of the trial court).

¶ 15 Order affirmed.